UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UTTAM CHAND RAKESH KUMAR, an Indian general partnership, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>DERCO ASSOCIATES, INC., a California corporation d/b/a DERCO FOODS,<br><br>Defendant. | No. 1:21-cv-00692-DAD-HBK<br><br>ORDER DENYING PLAINTIFFS' MOTION FOR A TEMPORARY RESTRAINING ORDER AND A PRELIMINARY INJUNCTION<br><br>(Doc. No. 3) |

On April 26, 2021, plaintiffs Uttam Chand Rakesh Kumar, Rakesh Kumar Bhatia, Akshay Kumar Bhatia, and UCRK Agros Private Ltd. (collectively, "plaintiffs") filed a complaint against defendant Derco Associates, Inc. d/b/a Derco Foods ("defendant" or "Derco"), seeking a declaratory judgment that the arbitration agreement between the parties is unenforceable and that a release of liability is enforceable against defendant. (Doc. No. 1 ("Compl.").) Plaintiffs also seek a permanent injunction prohibiting defendant from pursuing contract claims against plaintiffs through arbitration proceedings. (*Id.*) With their complaint plaintiffs also filed a motion for a temporary restraining order and preliminary injunction. (Doc. No. 3.) Pursuant to General Order No. 617 addressing the public health emergency posed by the coronavirus pandemic, on April 27, 2021, the court took this matter under submission to be decided on the

1

papers, without holding a hearing. (Doc. No. 11.) For the reasons explained below, the court will deny plaintiffs' motion for a temporary restraining order and a preliminary injunction.

**BACKGROUND**

In their complaint, plaintiffs allege the following. Plaintiffs Uttam Chand Rakesh Kumar and UCRK Agros Private Ltd. are international tree nut import businesses located in India that entered into multiple contracts with defendant Derco, an international tree nut export business located in Fresno, California, for the purchase and delivery of almonds to India. (Compl. at ¶¶ 8–9.) Between December 6, 2019 and March 20, 2020, plaintiffs entered into forty-four (44) contracts (collectively, "Seller Contract") for the purchase of containers of almonds from defendant, who would ship the almonds from defendant's facility in California to plaintiffs in Mumbai, India. (*Id.* at ¶ 9.) Each of the 44 contracts contained identical provisions except as to the purchase quantities and prices. (*Id.* at ¶ 9, fn.1.) Each of the Seller Contracts contained an identical arbitration provision (the "Arbitration Agreement") that stated as follows:

> This contract is subject to all of the Specialty Crop Trade Council (SCTC) terms and conditions for dried fruit, tree nuts and kindred products, including, but not limited to, the provision which requires buyer and seller to submit any and all disputes to binding arbitration to be administered by JAMS pursuant to its Streamlined Rules & Procedures. Judgment on the award may be entered in any court having jurisdiction. Any and all claims between the parties, including, but not limited to, any claims relating to this contract, shall be governed by the laws of the [S]tate of California. Any and all disputes which are not arbitrated shall be determined by the federal courts in the Eastern District of California and each party submits to the exclusive jurisdiction of such courts. The prevailing party in any action (including a lawsuit or arbitration) relating to this contract shall be entitled to recover costs and attorneys' fees from the other party.

(*Id.* at ¶ 9; *see e.g.*, *id.*, Ex. A at 22–24, 26.)

On May 7, 2020, defendant signed two separate Declarations cum Undertaking (collectively, the "Release") that were substantively identical except that each listed different Seller Contracts that together encompassed all 44 Seller Contracts between the parties. (*Id.* at ¶ 10, fn.2; *see also id.*, Ex. C at 104, 105.) The Release, signed only by defendant and not by plaintiffs, provided that the parties "have agreed to cancel the abovementioned Seller Contracts," and specifically that "all the Seller Contracts executed between [defendant] Derco and the

2

[plaintiff] Consignee shall come to an end and either of the parties shall have no legal or financial claim of whatsoever nature against the other with respect to the said Seller Contracts" upon defendant's receipt of "No Objection Certificates" ("NOC") issued by plaintiffs. (*Id.* at ¶ 10–11; *id.*, Ex. C at 104, 105.) NOCs are certificates that stated plaintiffs, as the purchasers of the almonds, did not object to the release at the Mumbai, India port of the almonds to defendant's possession. (Compl. at ¶ 10.) The Release also provided a release of liability:

> That we undertake that upon receipt of the abovementioned NOCs, Derco (or any person claiming under Derco) shall have no legal or financial claim/right/remedy/liability of whatsoever nature against the Consignee with respect to the abovementioned Seller Contracts. We further undertake not to initiate any legal action either civil or criminal in any court of jurisdiction (including arbitration Proceedings) against the Consignee arising, either directly or indirectly, out of the abovementioned Seller Contracts.

(*Id.* at ¶ 11 (emphasis omitted); *id.*, Ex. C at 104, 105.) The Release further stated that defendant acknowledged "to have executed this Declaration cum Undertaking voluntarily and without any force/coercion/duress." (*Id.* at ¶ 11; *id.*, Ex. C at 104, 105.) All parties were represented by counsel in negotiating the terms of the Release. (Compl. at ¶ 13.) Plaintiffs issued NOCs pursuant to the terms of the Release and defendant subsequently sold the almonds to another purchaser. (*Id.* at ¶ 12.)

On June 17, 2020, defendant initiated arbitration proceedings before JAMS in Los Angeles, California, alleging that plaintiffs breached the Seller Contract by refusing to accept or pay for the contracted-for almonds and seeking damages totaling approximately $1.5 million. (*Id.* at ¶ 15.) Defendant's Demand for Arbitration alleged that defendant signed the Release under duress, rendering the Release invalid and unenforceable. (*Id.* at ¶ 16.) On July 31, 2020, the Honorable Ann Kough (Ret.) was appointed as the arbitrator of the parties' dispute. (*Id.* at ¶ 18.) On September 14, 2020, plaintiffs sought leave to submit a motion to dismiss on the grounds that JAMS lacked jurisdiction over the parties' dispute because there was no valid arbitration agreement between the parties, arguing that the Release both extinguished the Seller Contract containing the Arbitration Agreement and barred defendant's contract claims. (*Id.* at ¶ 18, Ex. E at 117–18.) On September 30, 2020, after hearing oral argument, the arbitrator issued a

memorandum denying Plaintiff's request to submit a motion to dismiss finding that the issue was not an issue involving jurisdiction or arbitrability. (*Id.* at ¶ 19, Ex. F at 120.)

On October 2, 2020, plaintiffs sought reconsideration of that denial and, in the alternative, leave to file a motion for summary adjudication. (*Id.* at ¶ 20.) Defendant submitted an Amended Demand for Arbitration on October 5, 2020, which added an allegation that plaintiffs fraudulently induced defendant to enter into the Release by representing that plaintiffs were insolvent and thus judgment-proof, such that arbitration of the alleged contract breaches would be economically unreasonable. (*Id.* at ¶ 21, Ex. H at 141–42.) At oral argument on their motion, plaintiffs sought a bifurcated hearing to first determine whether the Release was valid such that arbitration could be enforced. (*Id.* at ¶ 22.) Following oral argument, the arbitrator issued Amended Order No. 1 that confirmed the denial of leave to file a motion to dismiss, denied plaintiff's request for leave to file a motion for summary adjudication, permitted defendant to file the Amended Demand, and denied plaintiff's request for a bifurcated hearing. (*Id.* at ¶¶ 23–24.)

As the arbitration moved forward, plaintiffs sought reconsideration of the denial of their request for a bifurcated hearing. (*Id.* at ¶ 27.) After additional briefing by both parties addressing the issue, the arbitrator again denied bifurcation and set the arbitration hearing, to encompass both defendant's claims as well as plaintiffs' argument that the parties' Release voids the Arbitration Agreement and defendant's claims, for June 7–9, 2021. (*Id.*)

While the parties engaged in the arbitration proceedings, plaintiffs filed suit against defendant in the High Court of Delhi, New Delhi, India, seeking an order enjoining defendant from enforcing the Arbitration Agreement against plaintiffs in California. (*Id.* at ¶ 28.) On November 9, 2020, the Indian court denied plaintiff's request for an injunction. (*Id.*) Plaintiffs subsequently appealed from that denial on November 25, 2020, where the matter remains pending before the appellate division of the Delhi court. (*Id.*) Oral argument in the Indian appeal was set for January 25, 2021, but was continued first to March 17, 2021 when defendant failed to appear, and then continued again to April 5, 2021 pursuant to defendant's request. (*Id.* at ¶ 29.)

On March 26, 2021, plaintiffs sought a temporary stay of the arbitration proceeding and a continuance of the pre-hearing deadlines from the JAMS arbitrator until after the appellate

division of the Delhi court ruled on plaintiffs' pending appeal before that court. (*Id.* at ¶ 30.) The pre-hearing deadlines plaintiff sought to continue included the payment of a $26,900 fee due April 8, 2021 that would become non-refundable on April 26, 2021 and the May 7, 2021 deadline for filing pre-hearing submissions on the evidence and listing the witnesses plaintiffs expected to rely upon during the arbitration hearing. (*Id.*) Defendant opposed the stay, arguing that the arbitration schedule should proceed unmodified because the Indian lower court had already denied plaintiffs' request for an injunction. (*Id.* at ¶ 32.) On April 4, 2021, the arbitrator denied plaintiffs' request for a temporary stay. (*Id.* at ¶ 33.)

The appellate division of the High Court of Delhi heard oral arguments in the Indian appeal on April 5, 9, and 15, 2021, with an additional hearing scheduled for April 19. (*Id.* at ¶ 35.) On April 18, 2021, the High Court of Delhi adjourned all hearings, including plaintiffs' appellate hearing, other than extremely urgent matters due to the severe rise of COVID-19 cases in India. (*Id.*) Plaintiffs' Indian counsel sought to appear before the High Court of Delhi to provide notice of plaintiffs' intent to file the instant action in this court, but the High Court issued an order on April 23, 2021 adjourning all hearings until July 9, 2021 due to the ongoing severe rise of COVID-19 infections in that country. (*Id.*) Plaintiffs filed an application in the High Court on April 24, 2021, requesting a temporary stay of the JAMS proceeding pending the ruling in the Indian appeal or, alternatively, permission to pursue remedies in the United States without prejudice to the pending Indian appeal. (*Id.*) The High Court denied plaintiffs' request that the application be heard as an urgent matter, adjourning the request for a stay of the JAMS proceeding until July.

On April 26, 2021, plaintiffs filed their complaint against defendant in this court seeking declaratory and injunctive relief pursuant to 28 U.S.C. §§ 2201, *et seq.* (Compl.) As noted above, plaintiffs seek (1) a declaratory judgment that the Release is valid and enforceable such that it renders the Arbitration Agreement unenforceable and (2) an injunction prohibiting defendant Derco from pursuing arbitration proceedings before JAMS and enforcing the Arbitration Agreement against plaintiffs. (*Id.* at ¶¶ 46, 48.) Plaintiffs filed the pending motion for a temporary restraining order and a preliminary injunction on the same day. (Doc. No. 3.) On

May 3, 2021, defendant filed its opposition to plaintiffs' motion and a request for judicial notice.[1] (Doc. No. 13.) Plaintiffs filed their reply thereto on May 4, 2021. (Doc. No. 20.)

## LEGAL STANDARD

The standard governing the issuing of a temporary restraining order is "substantially identical" to the standard for issuing a preliminary injunction. *See Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001). "The proper legal standard for preliminary injunctive relief requires a party to demonstrate 'that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest.'" *Stormans, Inc. v. Selecky*, 586 F.3d 1109, 1127 (9th Cir. 2009) (quoting *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008)); *see also Ctr. for Food Safety v. Vilsack*, 636 F.3d 1166, 1172 (9th Cir. 2011) ("After *Winter*, 'plaintiffs must establish that irreparable harm is likely, not just possible, in order to obtain a preliminary injunction.'"); *Am. Trucking Ass'n, Inc. v. City of Los Angeles*, 559 F.3d 1046, 1052 (9th Cir. 2009). A plaintiff seeking a preliminary injunction must make a showing on all four of these prongs. *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011). The Ninth Circuit has also held that "[a] preliminary injunction is appropriate when a plaintiff demonstrates . . . that serious questions going to the merits were raised and the balance of hardships tips sharply in the plaintiff's favor." *Id.* at 1134–35 (quoting

/////
/////
/////

---

[1] Defendant asks the court to take judicial notice of: (1) the JAMS Streamlined Arbitration Rules and Procedures; (2) records from the High Court of Delhi at New Delhi related to the matters filed by plaintiffs in the Indian court; and (3) Sections 48 and 150 of India's Customs Act, 1962. (Doc. No. 19 at 2–3.) The court hereby takes judicial notice of the JAMS Streamlined Arbitration Rules and Procedures because it is "not subject to reasonable dispute" and "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b); *O'Connor v. Uber Techs., Inc.*, 150 F. Supp. 3d 1095, 1098 n.2 (N.D. Cal. 2015). Furthermore, "a court may take judicial notice of public records of governmental entities and authoritative sources of foreign law." *Color Switch LLC v. Fortafy Games DMCC*, 377 F. Supp. 3d 1075, 1089 n.6 (E.D. Cal. 2019) (internal citations omitted). The court therefore takes judicial notice of the records from the High Court of Delhi, New Delhi and of India's Customs Act, 1962.

*Lands Council v. McNair*, 537 F.3d 981, 987 (9th Cir. 2008) (*en banc*)).[2] The party seeking the injunction bears the burden of proving these elements. *Klein v. City of San Clemente*, 584 F.3d 1196, 1201 (9th Cir. 2009); *see also Caribbean Marine Servs. Co. v. Baldrige*, 844 F.2d 668, 674 (9th Cir. 1988) (citation omitted) ("A plaintiff must do more than merely allege imminent harm sufficient to establish standing; a plaintiff must *demonstrate* immediate threatened injury as a prerequisite to preliminary injunctive relief"). Finally, an injunction is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter*, 555 U.S. at 22.

**ANALYSIS**

Here, plaintiffs seek a temporary restraining order and a preliminary injunction barring defendant from enforcing the Arbitration Agreement embedded in the Seller Contract between the parties. (Doc. No. 3 at 2.) Plaintiffs' sole cause of action is for declaratory judgment and injunctive relief under 28 U.S.C. § 2201. Plaintiffs bear the burden of demonstrating that they are likely to succeed on the merits of this action or, at the very least, that "serious questions going to the merits" have been raised. *All. for the Wild Rockies*, 632 F.3d at 1131. Plaintiffs have not met this burden.

The Declaratory Judgment Act permits the federal courts to "declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a). Although the Act "enlarged the range of remedies available in the federal courts, [it] did not extend their jurisdiction." *Skelly Oil Co. v. Phillips Petroleum Co.*, 339 U.S. 667, 671 (1950). When a plaintiff seeking declaratory relief "asserts a claim that is in the nature of a defense to a threatened or pending action, the character of the threatened or pending action determines whether federal question jurisdiction exists with regard to the declaratory judgment action." *Morgan Stanley & Co., LLC v. Couch*, 134 F. Supp. 3d

---

[2] The Ninth Circuit has found that this "serious question" version of the circuit's sliding scale approach survives "when applied as part of the four-element *Winter* test." *All. for the Wild Rockies*, 632 F.3d at 1134. "That is, 'serious questions going to the merits' and a balance of hardships that tips sharply towards the plaintiff can support issuance of a preliminary injunction, so long as the plaintiff also shows that there is a likelihood of irreparable injury and that the injunction is in the public interest." *Id.* at 1135.

1215, 1221 (E.D. Cal. 2015), *aff'd*, 659 F. App'x 402 (9th Cir. 2016) (quoting *Levin Metals Corp. v. Parr–Richmond Terminal Co.*, 799 F.2d 1312, 1315 (9th Cir.1986)). If the underlying threatened or pending action for which plaintiff seeks a declaratory judgment could have been brought in federal court, jurisdiction exists for the action in which declaratory relief is sought. *Id.*

As the Ninth Circuit has explained,

> [Defendant] contends the agreement is expired, but "where . . . the agreement contains a broad arbitration clause covering all disputes concerning the meaning of the terms and provisions of the agreement..... [d]isputes over expiration or termination must be submitted to arbitration." [*Brotherhood of Teamsters & Auto Truck Drivers Local No. 70 v. Interstate Distrib. Co.*, 832 F.2d 507, 510 (9th Cir. 1987)]; *see also Nolde Bros.*, 430 U.S. at 252, 97 S. Ct. 1067. We have reaffirmed this principle and clearly stated "a dispute over whether a contract has expired or has been terminated or repudiated....is for the arbitrator if the breadth of the arbitration clause is not in dispute."

*Optimum Prods. v. Home Box Off.*, 839 F. App'x 75, 78 (9th Cir. 2020)[3] (quoting *McKinney v. Emery Air Freight Corp.*, 954 F.2d 590, 593 (9th Cir.1992)). Whereas "[i]ssues regarding the *validity* or *enforcement* of a putative contract mandating arbitration should be referred to an arbitrator, […] challenges to the *existence* of a contract as a whole must be determined by the court" and not the arbitrator. *Sanford v. Memberworks, Inc.*, 483 F.3d 956, 962 & n.18 (9th Cir.2007). Moreover, the presence of broad arbitration clauses in the contract generally requires that disputes regarding termination of the contract be submitted to arbitration. *McKinney*, 954 F.2d at 593 ("Precepts laid down instruct us to distinguish between a dispute over whether a contract ever existed and a dispute over whether a contract has expired or has been terminated or repudiated. In the former case, the issue is for the court; in the latter, the issue is for the arbitrator if the breadth of the arbitration clause is not in dispute"); *Camping Constr. Co. v. District Council of Iron Workers*, 915 F.2d 1333, 1338–39 (9th Cir. 1990) (An agreement to arbitrate any grievance or controversy "ordinarily requires us to hold that the parties have provided for arbitration of disputes regarding termination—and repudiation as well[.]").

/////

---

[3] Citation to this unpublished Ninth Circuit opinion is appropriate pursuant to Ninth Circuit Rule 36-3(b).

8

Federal substantive law governs the question of arbitrability. *Simula, Inc. v. Autoliv, Inc.*, 175 F.3d 716, 719 (9th Cir. 1999). However, the general federal policy favoring arbitration is inapplicable when determining whether a valid agreement to arbitrate between the parties exists. *See Comer v. Micor, Inc.*, 436 F.3d 1098, 1104 n.11 (9th Cir. 2006). Rather, in determining the validity of an agreement to arbitrate, courts "should apply ordinary state-law principles that govern the formation of contracts." *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995); *Comer*, 436 F.3d at 1104 n.11 (concluding that ordinary contract principles determine who is bound by arbitration agreements). "Thus, generally applicable contract defenses, such as fraud, duress, or unconscionability, may be applied" to find an arbitration agreement invalidated. *Doctor's Assocs., Inc. v. Casarotto*, 517 U.S. 681, 686 (2000); *Ticknor v. Choice Hotels Int'l, Inc.*, 265 F.3d 931, 936–37 (9th Cir.2001).

Here, plaintiffs first contend that this court has jurisdiction over their declaratory relief claim because federal courts have jurisdiction over such claims seeking to enjoin arbitration when the court "would have jurisdiction over the claim being arbitrated if brought in federal court." (Doc. No. 3 at 21) (citing *Morgan Stanley*, 134 F. Supp. 3d at 1223). Plaintiffs note that there is an actual controversy between the parties involving enforcement of the arbitration agreement and that the parties here are completely diverse and the amount in controversy requirement is met, such that the court would have diversity jurisdiction over the arbitration claims if they had been brought in this court. (*Id.* at 21–22.) Plaintiffs note that the Arbitration Agreement is subject to the terms and conditions of the Specialty Crop Trade Council's ("SCTC") arbitration provision, which "provides only for arbitration for 'disputes regarding export sales arising under the agreement between Buyer and Seller, including disputes arising out of the SCTC terms and conditions." (*Id.* at 23–24.) Plaintiffs argue that this court must determine arbitrability because the Arbitration Agreement and the SCTC arbitration provision "'requires buyer and seller to submit any and all disputes to binding arbitration,' but does not specify that such disputes include questions of arbitrability." (*Id.* at 23.) Plaintiffs assert that the court may "resolve questions about the jurisdiction of an arbitrator *de novo* pursuant to the Declaratory Judgment Act," emphasizing that the arbitrator has ordered the parties to participate in a full hearing on both the

9

effect of the Release on the Arbitration Agreement as well as on the merits of defendants' claim. (*Id.* at 24) (citing *Orion Pictures Corp. v. Writers Guild of Am., W., Inc.*, 946 F.2d 722, 725 (9th Cir. 1991)).

Plaintiffs further argue that the Arbitration Agreement is not enforceable because the Release provides that the parties "have agreed to cancel the abovementioned Seller Contracts," including the embedded Arbitration Agreements. (*Id.* at 24–25.) Plaintiffs emphasize that the Release specifically provided that defendant "undertake not to initiate any legal action either civil or criminal in any court of jurisdiction (including arbitration Proceedings)" for claims rising directly or indirectly from the Seller Contracts. (*Id.* at 25.) In plaintiffs' view, the Release was validly supported by consideration because both parties mutually released any "legal or financial claim of whatsoever nature" related to the Seller Contracts and because plaintiffs agreed to issue NOCs in exchange for the Release. (*Id.* at 26.) Plaintiffs also argue that no economic duress or fraud occurred in the negotiation of the Release, pointing to their prior payments to defendant totaling approximately $20 million for contracts executed between April 2019 and March 21, 2020 as proof of their solvency. (*Id.* at 27–28.)

In its opposition, defendant Derco argues that the Arbitration Agreement delegated the question of arbitrability to the arbitrator, pointing to the incorporation of the terms and conditions of SCTC's arbitration provision into the Seller Contracts, which "requires buyer and seller to submit any and all disputes to binding arbitration to be administered by JAMS pursuant to its Streamlined Rules & Procedures." (Doc. No. 13 at 17–18.) Defendant argues that this court must enforce the Arbitration Agreement because it clearly delegated the determination of arbitrability questions to the arbitrator by incorporating JAMS Streamlined Arbitration Rules & Procedures Rule 8(b), which in turn provide that "[t]he Arbitrator has the authority to determine jurisdiction and arbitrability issues as a preliminary matter." (*Id.* at 17) (citing *Brennan v. Opus Bank*, 796 F.3d 1125, 1132 (9th Cir. 2015)). Defendant asserts that, here, the arbitrator found defendant's claims to be arbitrable in the October 8, 2020 order, in which the arbitrator simply stated that "[t]he claims are arbitrable." (*Id.* at 19.)

/////

10

Defendant also argues that plaintiffs are not likely to succeed on the merits of their claim because the Releases lacked consideration and were entered into upon economic duress and fraudulently induced. (*Id.* at 24–28.) Defendant argues that the Release lacked consideration because plaintiffs were required to provide the NOCs under the covenant of good faith and fair dealing to mitigate defendant's damages upon plaintiffs' refusal to accept and pay for the shipped containers of almonds. (*Id.* at 24–25.) Defendant also alleges economic duress caused by plaintiffs' refusal to accept the delivered almonds or to pay for those almonds, pointing to the risk of product loss due to exposure to the elements and the detention and demurrage charges of $6000 incurred daily as the almonds remained unclaimed at the Mumbai port. (*Id.* at 27.) Defendant additionally argues that the Release was fraudulently induced by plaintiffs' representation of their lack of liquidity to pay for even one load of almonds, such that defendant understood plaintiffs to be indicating that they were judgment proof. (*Id.* at 28–29.) Defendant contends that, in light of plaintiffs' alleged lack of liquidity, no reasonable business would have sought legal action against plaintiffs in lieu of attempting to mitigate their damages by first reselling the refused almonds to another purchaser, and that defendant could not have released plaintiffs of claims related to the alleged misrepresentation of plaintiffs' liquidity under these circumstances. (*Id.* at 27–28, 30.) Finally, defendant argues that even if the Release were to be found valid, it would merely cancel the Seller Contract "according to terms laid out in the Declarations," such that the Release only bars claims seeking monetary damages from breach of the Seller Contract, leaving defendant free to seek a declaratory judgment from the arbitrator that plaintiffs breached the Seller Contract.

In their reply, plaintiffs for the most part merely reiterate their arguments regarding their likelihood of success on the merits. (Doc. No. 20.) Plaintiffs do clarify that it is their contention that the arbitrator has not yet ruled on the question of arbitrability, finding instead that plaintiffs' arguments with respect to the validity of the Release are affirmative defenses to be raised at the arbitration hearing. (*Id.* at 6–7.) Plaintiffs argue that the arbitrator lacks the authority to determine the arbitrability of defendant's contract claims because the Release "clearly and unmistakably" terminated the Seller Contract containing the Arbitration Agreement. (*Id.* at 8–9.)

1 Plaintiffs argue that the court, not an arbitrator, determines arbitrability when parties enter into
2 settlement agreements that do not contain arbitration provisions. (*Id.* at 10–11) (citing *Ingram*
3 *Micro Inc. v. Signeo Int'l, Ltd.*, No. 8:13-cv-01934-DOC-AN, 2014 WL 3721197, at *3 (C.D.
4 Cal. July 22, 2014)).

In this case it is undisputed that the Seller Contract existed, was validly formed, and contained a broad Arbitration Agreement. The Arbitration Agreement "requires buyer and seller to submit any and all disputes to binding arbitration to be administered by JAMS pursuant to its Streamlined Rules & Procedures." (Compl. at ¶ 9; Doc. No. 13 at 18.) JAMS Streamlined Arbitration Rules & Procedures Rule 8(b) specifically provides that the arbitrator "has the authority to determine jurisdiction and arbitrability issues as a preliminary matter." (Doc. No. 19-1 at 6.) Such incorporation of a delegation provision satisfies the "clearly and unmistakably" standard to be applied in determining the parties' intent to delegate the question of arbitrability to the arbitrator. *See Brennan,* 796 F.3d at 1131 (finding that "the parties' incorporation of the AAA rules [which contained a delegation provision] constituted 'clear and unmistakable' evidence of their intent to submit the arbitrability dispute to arbitration"). The presence of broad arbitration clauses generally requires that disputes regarding termination of a contract must be submitted to arbitration. *See Optimum Prods.*, 839 F. App'x at 78; *Camping Constr.*, 915 F.2d at 1340. As noted above, the existence of a contract containing an arbitration clause or whether such a contract is void are matters for the court and not the arbitrator. *See Sanford*, 483 F.3d at 962 & n. 8 ("Issues regarding the validity or enforcement of a putative contract mandating arbitration should be referred to an arbitrator, but challenges to the existence of a contract as a whole must be determined by the court prior to ordering arbitration.").

The question presented in the motion now pending before this court, however, turns on the parties' dispute over whether the Release terminated or repudiated the Seller Contract and the Arbitration Agreement, not on whether the Seller Contract is void as a matter of contract formation. In fact, plaintiffs make no allegations challenging the construction of the arbitration clause itself. Accordingly, the issue in dispute here is a matter for the arbitrator. *Cf. Homestake Lead Co. of Missouri v. Doe Run Res. Corp.*, 282 F. Supp. 2d 1131, 1139–40 (N.D. Cal. 2003)

(finding it a matter for the court when plaintiff challenged the construction of the arbitration clause itself, whereas "[i]f this were at its core a question of the [entire contract] and its cancellation under section 6.03 [of a subsequent agreement], that would be a question for the arbitrator"). Here, plaintiffs have argued that the Release purports to "cancel" the Seller Contract and release plaintiffs of all liability arising from the Seller Contract upon defendant's receipt of the NOCs. Defendant, on the other hand, has presented arguments calling into question the validity of the Release, and thus its effect on the Seller Contract and the embedded Arbitration Agreement.[4] Given the broad language of the arbitration clause at issue here, whether the Seller Contract, including its Arbitration Agreement, has terminated due to the Release is a question for the arbitrator and not for this Court. *See McKinney*, 954 F.2d at 593; *Optimum Prods.*, 839 F. App'x at 78; *Camping Constr.*, 915 F.2d at 1340.

The Ninth Circuit's opinion in *Brennan v. Opus Bank,* 796 F.3d 1125 (9th Cir. 2015), is instructive in this regard. In *Brennan*, "three agreements—each nested inside the other—[were] relevant to the analysis": (1) plaintiff's employment agreement, (2) the arbitration clause within the agreement, and (3) the delegation provision via the arbitration clause's incorporation of the AAA rules which delegated enforceability questions to the arbitrator. *Id.* at 1133. "The last two [were] separate agreements to arbitrate different issues." *Id.* The court found that because "only issue before this Court is who—an arbitrator or a judge—should decide the forum for resolving the validity of the Arbitration Clause as a whole . . . that question is resolved by determining the validity of the Delegation Provision alone." *Id.* (citing *Rent-A-Center, W., Inc. v. Jackson*, 561 U.S. 63, 73–75 (2010)). The court concluded that it "need not consider" the claim that the delegation provision was invalid because the plaintiff had failed to make any argument specific to the delegation provision and instead merely argued that the arbitration clause as a whole was invalid. *Id.* Accordingly, the court in *Brennan* held that the question of whether the

/////

---

[4] It would be inappropriate for the court to express an opinion on the ultimate effect of the Release and it therefore will not do so. *See McKinney*, 954 F.2d at 593 (holding that the questions as to whether a contract containing an arbitration clause has expired, terminated, or been repudiated are matters for the arbitrator where the arbitration clause is sufficiently broad).

13

arbitration clause as a whole was valid "is for the arbitrator to decide in light of the parties' 'clear and unmistakable' delegation of that question." *Id.*

Here, just as in *Brennan*, the Seller Contract, the Arbitration Agreement, and the delegation provision via the Arbitration Agreement's incorporation of JAMS Streamlined Rules and Procedures are relevant to the required analysis. *See id.* at 1133. In arguing that the court should enjoin defendant from enforcing the Arbitration Agreement and should itself determine the validity of the Arbitration Agreement, plaintiffs put the delegation provision at issue. *See id.* Plaintiffs argue that the Arbitration Agreement does not "clearly and unmistakably" contain a delegation provision (*see* Doc. No. 3 at 23–24), but the Arbitration Agreement incorporated the JAMS Streamlined Rules & Procedures, which does contain a delegation provision in its Rule 8(b). (*See* Compl. at ¶ 9; Doc. Nos. 13 at 18; 19-1 at 6.) Plaintiffs also argue that the Release cancels the Seller Contract and thus cancels the Arbitration Agreement as a whole. (*See* Doc. Nos. 3 at 23–25; 9 at 8–10.) However, plaintiffs do not extend that contention specifically to the delegation provision. (*See* Doc. Nos. 3 at 23–25; 9 at 8–10.) Much like the plaintiff's arguments in *Brennan* that the arbitration clause was unconscionable as a whole without specifically arguing the delegation provision was unconscionable, plaintiffs' arguments that the Release "clearly and unmistakably terminated the Seller Contract containing the Arbitration Agreement" do not make an argument specifically challenging the delegation provision. (Doc. No. 9 at 8–9.) *See Brennan*, 796 F.3d at 1133 ("[S]ince [the plaintiff[ failed to make any arguments specific to the delegation provision, and instead argued that the [Arbitration Clause] as a whole is unconscionable under state law, we need not consider that claim, because it is for the arbitrator to decide in light of the parties' clear and unmistakable delegation of that question.") (internal quotations omitted); *Rent-A-Center*, 561 U.S. at 73–74 (holding that, where the plaintiff challenged the entire arbitration agreement as unconscionable but "did not make any arguments specific to the delegation provision," the Court "need not consider [the plaintiff's unconscionability claim] because none of [the plaintiff's] substantive unconscionability challenges was specific to the delegation provision."). Because plaintiffs here argue only that the Arbitration Agreement as a whole is terminated by the Release and do not make a specific argument as to the delegation provision,

14

here, as in *Brennan*, the validity of the Arbitration Agreement and of the Seller Contract is therefore for the arbitrator to decide in light of the parties' delegation of the question. *See Brennan*, 796 F.3d at 1133.

> In arguing that this court should review the jurisdiction of the arbitrator *de novo*, plaintiffs' reliance on the decision in *Orion Pictures Corp. v. Writers Guild of Am., W., Inc.*, 946 F.2d 722 (9th Cir. 1991), is misguided. The Ninth Circuit in that case held: A district court may resolve questions about the jurisdiction of an arbitrator *de novo* pursuant to the Declaratory Judgment Act, and may do so even after the arbitrator has asserted jurisdiction over the dispute. A district court may not do so, however, at the behest of a party which has submitted the question of arbitrability to the arbitrator for decision. Once a party has "initially submitted the arbitrability question to the arbitrator, any subsequent judicial review [is] narrowly circumscribed." *George Day Const. Co. v. United Brotherhood of Carpenters & Joiners*, 722 F.2d 1471, 1476 (9th Cir.1984). A federal court can no longer decide arbitrability *de novo*, but must await the arbitrator's ruling on arbitrability and enforce that ruling if it represents a "plausible interpretation" of the [contract]. *Id.* at 1477; *see also Ralph Andrews Productions, Inc. v. Writers Guild of America, West*, 938 F.2d 128, 131 (9th Cir.1991).

*Orion Pictures Corp.*, 946 F.2d at 725. Here, plaintiffs have already submitted the question of the validity of the Arbitration Agreement to the arbitrator in light of the Release. (*See* Compl. at ¶¶ 18, 22; Doc. No. 3 at 24.) The arbitrator has determined to hear that issue in conjunction with the merits of defendant's claims during the arbitration hearing scheduled for June 7, 2021. (Compl. at ¶ 27; Doc. No. 3 at 24.) Therefore, this court cannot decide arbitrability *de novo* but must instead wait for the arbitrator's ruling on the effect of the Release on the parties' Arbitration Agreement. *See Orion Pictures Corp.*, 946 F.2d at 725.

Plaintiffs' reliance on *Ingram Micro Inc. v. Signeo Int'l, Ltd.*, No. 8:13-cv-01934-DOC-AN, 2014 WL 3721197 (C.D. Cal. July 22, 2014), is similarly misplaced. The parties in *Ingram Micro Inc.* entered into a distribution contract containing an arbitration clause, only to enact a new distribution contract the following year that, while incorporating some provisions of the earlier contract, did not contain an arbitration provision and superseded all prior agreements. *Id.* at \*1. When disputes arose from the contract, the parties entered into a settlement agreement purporting to release all claims and superseding all prior contracts but not containing an arbitration clause. *Id.* Upon breach of the settlement agreement, the parties entered into an

amended settlement agreement, which also did not contain an arbitration provision. *Id.* The demand for arbitration relied on the arbitration provision of the initial distribution contract, but did not seek relief in the form of damages under that agreement. *Id.* at *2. The court found that claims based on solely on the alleged breaches of the later-in-time contracts were not subject to arbitration because none of the agreements under which plaintiff was seeking relief contained an arbitration clause and, in fact, those agreements superseded the only prior contract with the arbitration provision. *Id.* at *2–3.

Unlike in *Ingram Micro Inc.*, here the underlying claims at issue arose from the alleged breach of the Seller Contract, not the subsequent Release. In *Ingram Micro Inc.*, plaintiff alleged defendant delivered faulty goods in breach of the later-in-time new distribution contract and subsequent settlement agreements, not in breach of the original distribution contract containing the arbitration provision. Here, in contrast, defendant does not claim that plaintiffs breached the Release. Rather, defendant contends that plaintiffs breached the original Seller Contract by refusing to accept and pay for the contracted-for almonds. *See id.* at *1; (Compl. at ¶ 15). Moreover, unlike *Ingram Micro Inc.*, where the question of termination was focused only on the arbitration provision, plaintiffs in this action argue that the entire Seller Contract, including the Arbitration Agreement, has been terminated due to the subsequent Release and is therefore not arbitrable. As discussed above, the Ninth Circuit has explicitly held that a dispute over whether a contract containing an arbitration clause has been terminated or repudiated is a matter for the arbitrator to determine where, as here, the arbitration clause is sufficiently broad. *See McKinney*, 954 F.2d at 593.

For all of the reasons explained above, the court concludes that plaintiffs have not demonstrated that they are likely to succeed on the merits of this action, or that they have raised serious questions going to the merits of their claims. Having failed to make that required showing, their motion must be denied.

/////

/////

/////

16

**CONCLUSION**

Accordingly, plaintiffs' motion for a temporary restraining order and preliminary injunction (Doc. No. 3) is denied.

IT IS SO ORDERED.

Dated: **May 14, 2021**

UNITED STATES DISTRICT JUDGE